IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN FINGER,<br><br>   Plaintiff,<br><br>  v.<br><br>HOUSTON WIRE & CABLE COMPANY, ROY W. HALEY, MARGARET S. LAIRD, DAVID NIERENBERG, JAMES L. POKLUDA III, SANDFORD W. ROTHE, WILLIAM H. SHEFFIELD, and G. GARY YETMAN,<br><br>   Defendants. | Case No.<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

  Plaintiff Susan Finger ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE AND SUMMARY OF THE ACTION**

  1. Plaintiff brings this action against Houston Wire & Cable Company ("Houston Wire" or the "Company") and the members of Houston Wire's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their agreement to be acquired by Omni Cable, LLC ("Omni Cable") (the "Proposed Transaction").

2. On March 25, 2021, Houston Wire and Omni Cable entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, Houston Wire stockholders will receive $5.30 in cash for each share of Houston Wire common stock that they own.

3. On May 12, 2021, Houston Wire filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction. The failure to adequately disclose such material information renders the Proxy Statement false and misleading.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes

whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, the Company's stock trades on the Nasdaq Global Select Market, which is also headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Houston Wire.

9. Defendant Houston Wire is a Delaware corporation, with its principal executive offices located at 10201 North Loop East, Houston, Texas 77029.  Houston Wire's common stock trades on the Nasdaq Global Select Market under the ticker symbol "HWCC."

10. Defendant Roy W. Haley is, and has been at all relevant times, a director of the Company.

11. Defendant Margaret S. Laird is, and has been at all relevant times, a director of the Company.

12. Defendant David Nierenberg is, and has been at all relevant times, a director of the Company.

13. Defendant James L. Pokluda III is, and has been at all relevant times, President, Chief Executive Officer, and a director of the Company.

14. Defendant Sandford W. Rothe is, and has been at all relevant times, a director of the Company.

15. Defendant William H. Sheffield is, and has been at all relevant times, a director of the Company.

16. Defendant G. Gary Yetman is, and has been at all relevant times, a director of the Company.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants," and together with Houston Wire, "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company

18. Houston Wire is a large provider of wire and cable and fastener products in the U.S. market. The Company sells electrical products through wholesale electrical distributors and fastener products through industrial distributors. As of December 31, 2020, Houston Wire also sold mechanical wire and cable, fabricated steel wire rope and synthetic lifting and hardware products through two divisions, Southern Wire, which was sold on December 31, 2020, and Southwest Wire Rope, which was sold on March 12, 2021.

### B. The Proposed Transaction

19. On March 25, 2021, Houston Wire and Omni Cable issued a joint press release announcing the Proposed Transaction stating, in pertinent part:

> HOUSTON, Texas and WEST CHESTER, Pa., March 25, 2021 -- Houston Wire & Cable Company (NASDAQ: HWCC) (HWCC) and Omni Cable, LLC (OmniCable) today announced that they have entered into a definitive agreement under which OmniCable will acquire all outstanding shares of HWCC common stock for $5.30 per share in an all-cash transaction valued at $91 million. The price represents a premium of 39% to HWCC's unaffected closing price of $3.80 on March 24, 2021 and an 89% premium to the $2.81 average closing price for the preceding 12-month period. The transaction was unanimously approved by HWCC's Board of Directors. All HWCC directors and officers have agreed to vote

their shares, including shares held by The D3 Family Funds, in favor of the transaction. Such shares currently represent approximately 19% of the issued and outstanding shares as of March 24, 2021.

OmniCable is a subsidiary of Dot Holdings Co, which is owned by Dot Family Holdings, owners and operators of Dot Foods, Inc., the largest food industry redistributor in North America.

The combined company results in a national wire and cable redistribution industry leader that will maximize OmniCable's and HWCC's highly complementary businesses, products and national footprint to better meet the needs of both companies' customers. The combined company also will continue HWCC's fastener redistribution business. Following the close of the transaction, each company will retain its own brands and its existing locations.

James L. Pokluda III, HWCC's President & CEO, commented, "HWCC, Vertex and OmniCable are highly respected suppliers in their respective markets serving electrical and industrial distributors throughout the U.S. and Canada. This merger creates an outstanding combination of leading businesses that will be well positioned to provide increased value and customer service to its redistributor partners."

"The HWCC team shares our passion for customer service," said Jeff Siegfried, OmniCable founder and vice chairman. "Our shared central focus on redistribution, logistical expertise, and unyielding pursuit of perfection for our business partners will drive both businesses to enhance the value that we bring to the marketplace. We look forward to continued growth and the shared learning we know will come from this new relationship."

**Transaction Details**

Under the terms of the agreement, HWCC stockholders will receive $5.30 in cash for each share of common stock they own. In addition, each stock-based equity award outstanding under the Company's stock and deferred compensation plans will be cancelled in exchange for $5.30. No consideration will be paid for stock options, all of which have exercise prices above the merger price.

The agreement includes a 30-day "go-shop" period expiring on April 24, 2021, which permits HWCC's Board of Directors and advisors to solicit alternative acquisition proposals from third parties. HWCC will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and HWCC does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or is otherwise required.

The transaction is expected to close following HWCC's Annual Meeting of Stockholders, scheduled for May 25, 2021, subject to customary closing conditions, including approval by HWCC stockholders. Upon completion of the transaction, HWCC common stock will no longer be listed on any public market.

**C. False and Misleading Statements and/or Material Omissions in the Proxy Statement**

20. On May 12, 2021, Defendants filed the materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Houston Wire's stockholders. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy Statement is rendered misleading by the omission of critical information.

21. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

22. First, the Proxy Statement omits material information regarding the Company's financial projections, including the risk adjusted, after-tax unlevered free cash flows the Company's financial advisor Johnson Rice & Company, L.L.C. ("Johnson Rice") utilized in its discounted cash flow analysis, and the line items underlying the Company's risk adjusted, after-tax unlevered free cash flows, EBITDA, and cash flow.

23. Second, the Proxy Statement omits material information regarding the financial analyses performed by Johnson Rice.

24. With respect to Johnson Rice's Selected Transactions Analysis, the Proxy Statement fails to disclose the total values and closing dates of each of the transactions.

25. With respect to Johnson Rice's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the risk adjusted, after-tax unlevered free cash flows; (ii) the terminal values for the Company; and (iii) the inputs and assumptions underlying the discount rates ranging from 7.5% to 10.3%.

26. With respect to Johnson Rice's Relative Trading Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

27. Third, The Proxy Statement fails to disclose material information relating to the Company's financial advisors' potential conflicts of interest.

28. The Proxy Statement fails to disclose the timing and nature of the past services Johnson Rice has provided to the Company, and the amount of compensation Johnson Rice has received for providing such services.

29. Additionally, the Proxy Statement fails to disclose material information regarding William Blair & Company, L.L.C.'s ("William Blair) engagement, including: (i) the amount of compensation William Blair has received or will receive in connection with its engagement; (ii) the amount of William Blair's compensation contingent upon the consummation of the Proposed Transaction; (iii) whether William Blair has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by William Blair for providing such services.

30. The omission of the above-referenced material information renders the following sections of the Proxy Statement false and misleading: "Financial Projections Prepared by the Company's Management," "Opinion of the Company's Financial Advisor," and "Background of the Merger."

## COUNT I

### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

31.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

32.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

33.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act.  Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction.  The Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

35.     By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

36.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

<01>

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

37. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth in full.

38. The Individual Defendants acted as controlling persons of Houston Wire within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Houston Wire, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

39. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

41. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

42. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Houston Wire's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Houston Wire stockholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  June 4, 2021                                  Respectfully submitted,

                                                               By  /s/ *Shallom Engel*
                                                                      Shallom Engel
                                                                      **Engel Law PLLC**
                                                                      2329 Nostrand Avenue, Suite 100
                                                                      Brooklyn, NY 11210
                                                                      Telephone: (917) 573-6555
                                                                      Email: shallom@engellawpllc.com

                                                                      *Attorneys for Plaintiff*